UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
RESHONAH WILLIAMS,

          *Plaintiff,*                                    18 CV 1451

          *v.*

                                                   **COMPLAINT**

BIRCH FAMILY SERVICES, INC.,

          *Defendant.*
------------------------------------------------------------------------×

      Plaintiff Reshonah Williams, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant Birch Family Services, Inc. ("Birch"), as follows:

**PRELIMINARY STATEMENT**

      1.      Ms. Williams, an experienced assisted care professional, was employed as a Day Habilitation Specialist at Birch, a nonprofit which provides education, habilitation, and residential services to people with autism and other developmental disabilities.  Birch subjected Ms. Williams to an environment where, despite her status as a victim of domestic violence and diagnosis of anxiety, post-partum depression, ADHD, and Major Depressive Disorder, she was the victim of repeated physical assaults by Birch's clients.  Only when Ms. Williams became pregnant and was refusing to subject her unborn child to the dangers of her work environment did Birch transfer her to a different location.  However, upon Ms. Williams's return from maternity leave, Birch refused to provide her with adequate facilities to pump breast milk, often resulting in Ms. Williams having to do so publicly.  Additionally, Birch was hostile to Ms. Williams' desire to breastfeed at all, dismissing it as unnecessary.  When Ms. Williams complained, Birch manufactured performance issues and ultimately terminated her.

      2.      Ms. Williams seeks damages and costs against Birch for discriminating against her based on her pregnancy by subjecting her to a hostile work environment, failing to provide

1

her with a reasonable accommodation, and terminating her employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act (PDA), 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq*.

3. Ms. Williams also seeks damages and costs against Birch for discriminating against her based on her disability by subjecting her to a hostile work environment, failing to provide her with a reasonable accommodation, and terminating her employment, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and the NYCHRL.

4. Ms. Williams also seeks damages and costs against Birch for discriminating against her based on her status as a victim of domestic violence, in violation of the NYCHRL.

5. Ms. Williams also seeks damages and costs against Birch for retaliating against her for her complaints about unlawful discrimination, in violation of Title VII, the ADA, and the NYCHRL.

6. Ms. Williams also seeks damages and costs against Birch for violating the breastfeeding provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(r).

**JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

7. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under Title VII, the ADA, and the FLSA.

8. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

9. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

10. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a Right-to-Sue letter dated December 8, 2017, relating to the discriminatory acts described in this Complaint. This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

11. Plaintiff respectfully requests a trial before a jury.

## PARTIES

12. Ms. Williams, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

13. Upon information and belief, at all times relevant hereto, Birch was and is a not-for-profit corporation organized under the laws of the State of New York with its principal corporate offices located at 104 West 29th Street, 3rd Floor, New York, New York 10001 in New York County. Upon information and belief, at all times relevant hereto, Birch was engaged in the business of providing education, habilitation, and residential services to people with autism and other developmental disabilities.

## COVERAGE UNDER FLSA

14. At all times relevant hereto, Ms. Williams was Birch's "employee" within the meaning of the FLSA.

15. At all times relevant hereto, Birch was Ms. Williams's "employer" within the meaning of the FLSA.

16. Birch was, and continues to be, an "employer" within the meaning of the FLSA.

17. At all times relevant hereto, Birch was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA, as it generates revenue by providing education, habilitation, and residential services to people with autism and other developmental disabilities.

18. Upon information and belief, Birch's annual gross revenue was in excess of $500,000 during the relevant time period.

19. At all times relevant hereto, Ms. Williams was "engaged in commerce" and subject to individual coverage of the FLSA.

## STATEMENT OF FACTS

20. Ms. Williams has over a decade of experience as a Day Habilitation Specialist with nonprofits such as United Cerebral Palsy of New York and Services for the Underserved.

21. Ms. Williams is also a victim of domestic violence and is diagnosed with anxiety, post-partum depression, ADHD, and Major Depressive Disorder.

22. Ms. Williams began working at Birch as an Overnight Shift Supervisor in and around August 2015 at Birch's Flatlands 6th Street location in Brooklyn, New York.

23. As an Overnight Shift Supervisor, Ms. Williams's job duties included: providing managed care; assisting patients with essential life functions and quality of life activities; working with patients' friends and family members; providing fire safety training, emergency management training, and other mandated trainings; developing individual service plans; and

reporting critical information concerning patient condition, issues with individual equipment, and environment needs and safety to the program coordinator.

24. Although Ms. Williams was a reliable, high-performing employee throughout her employment at Birch, she was continuously harassed due to her gender, pregnancy, disability, and status as a domestic violence victim.

25. By October 2015, Ms. Williams had been physically attacked at work on multiple occasions due to the violent nature of some of the mentally disabled patients to whom she attended at Birch.

26. Around this same time, in and around October 2015, Ms. Williams also learned that she was pregnant and promptly disclosed her pregnancy to Birch.

27. Only a few days after learning that she was pregnant and disclosing her pregnancy to Birch, Ms. Williams was again violently attacked at work by a male patient.

28. While working an understaffed shift, Ms. Williams found herself alone with a male patient who had a history of sexual attraction towards pregnant women.

29. Ms. Williams instructed the patient to get in the shower.

30. When the patient got out of the shower, he attempted to strike Ms. Williams, wrapped his arms around her, and held onto her while he was naked and wet.

31. Ms. Williams screamed for help, but to no avail.

32. Ms. Williams was ultimately able to escape the patient's grip and calm him down.

33. Ms. Williams was deeply upset and shaken by the incident, particularly in light of her anxiety disorder and her history as a victim of domestic violence, and she reported what had occurred to Birch.

34. As a result of this incident and Ms. Williams's report, Birch transferred Ms. Williams to its 418 Grove Street location.

35. Upon being transferred to 418 Grove Street, Birch reduced Ms. Williams's hourly pay rate by approximately $2.00, from $14.62 to $12.60, and told her without explanation that she would no longer be eligible for employee benefits.

36. Birch reduced Ms. Williams's pay, deprived her of benefits, and transferred her because of its belief that she could not perform her job at the Flatlands 6th Street location because of her disabilities, status as a domestic violence victim, and pregnancy.

37. On or about May 27, 2016, Ms. Williams began her maternity leave.

38. Ms. Williams gave birth to her child on May 31, 2016.

39. Ms. Williams returned from maternity leave on or about October 7, 2016.

40. Upon Ms. William's return, Birch transferred her to its Brooklyn Day Habilitation location.

41. At the Brooklyn Day Habilitation, Ms. Williams was assigned to report to Dana Rambo-Keaton, the Brooklyn Day Habilitation's Coordinator, who interviewed Ms. Williams for the position as if she were a new employee.

42. The day after this interview, on or about October 8, 2017, Ms. Williams met Tobie Bufford, a Birch employee at the Brooklyn Day Habiliation location.

43. Ms. Bufford displayed open animosity towards Ms. Williams regarding Ms. Williams's home life, parenting and family choices, including Ms. Williams's decision to breastfeed her child, which would involve pumping at work.

44. Ms. Bufford made disgusted facial expressions and negative comments when she learned that Ms. Williams needed to pump at work.

6

45. For example, when Ms. Williams told Ms. Bufford and Ms. Rambo-Keaton that she would most likely be breastfeeding her child for two to three years, Ms. Bufford stated, in a derisive and disgusted tone, that six months was "all that was necessary."

46. Ms. Bufford asked Ms. Williams invasive, inappropriate questions about breastfeeding and where she would pump at work and attempted to discourage Ms. Williams from breastfeeding her child or pumping.

47. For example, Ms. Bufford told Ms. Williams that she should "put cold water on [her] breasts" to stop her breast milk from flowing.

48. From this point forward, Birch's harassment of Ms. Williams concerning her pregnancy and need to pump only intensified.

49. Both Ms. Rambo-Keaton and Ms. Bufford told Ms. Williams that she could use Ms. Bufford's office to store her pump equipment.

50. Ms. Bufford, however, repeatedly locked her door and left the office.

51. As a result, Ms. Williams was often prevented from accessing her pumping equipment.

52. On other occasions, Birch employees—some of whom were men—remained in the room while Ms. Williams pumped until Ms. Williams explicitly asked for privacy.

53. In some instances, even after Ms. Williams explicitly asked them to leave, her coworkers would refuse to do so, leave the door open while she pumped, or ask her to stop pumping.

54. On other occasions, Birch employees—again including male employees—would intentionally abruptly enter the room that Ms. Williams was using to express milk, leaving her breast exposed to them.

55. As such, Birch regularly deprived Ms. Williams of a private location to express breast milk.

56. Birch also required Ms. Williams to clock out while she pumped.

57. Birch employees were allowed a paid lunch hour, during which Ms. Williams should have been able to pump.

58. Birch, however, refused to allow Ms. Williams a paid or unpaid break to express breast milk.

59. When Ms. Williams questioned the need to clock out for pumping, Ms. Rambo-Keaton told her that she had to clock out because her pumping was "personal time" and "no one else in the office" needed to pump.

60. In addition to being discriminatory, this comment was patently untrue; another Birch employee, Temitayo Jegede, returned to work after having a baby and did not have to clock out for her pumping time.

61. Birch's refusal to accommodate Ms. Williams by allowing her break time or a private location to pump was related to Birch's discriminatory and retaliatory animus towards Ms. Williams.

62. In and around December 2016, Ms. Williams made explicit complaints about the harassment and discrimination that she had faced and continued to face concerning her pregnancy pumping to Ms. Rambo-Keaton, Birch's Human Resources Department ("HR"), and Ms. Rambo-Keaton's supervisor, a woman known to Ms. Williams only as "Lisa."

63. Everyone to whom Ms. Williams complained was dismissive, however, telling Ms. Williams only that they "didn't know that was going on," and Birch never took any action to resolve the situation.

64. Far from it, Ms. Rambo-Keaton disparaged Ms. Williams and threatened her employment because of her complaints, telling Ms. Williams to "come back next year and be a better person" while other Birch employees were present.

65. On or about January 12, 2017, Birch wrote Ms. Williams up for "tardiness."

66. This write-up was completely baseless; Ms. Williams was frequently forced to clock in late because Ms. Bufford would arrive late.

67. Ms. Williams, who was at work on time, did not have access to the building until Ms. Bufford arrived to let her in.

68. Ms. Bufford would then subsequently modify her own hours, as well as the hours of other employees who were forced to clock in late because of Ms. Bufford's own tardiness, but refused to modify Ms. Williams's hours.

69. Ms. Williams signed the write-up about her purported "tardiness" but noted in writing that she suspected discrimination and retaliation.

70. In and around March 2017, Ms. Rambo-Keaton and Ms. Bufford reprimanded Ms. Williams without explanation for purportedly "failing to follow the chain of command" at Birch, which Ms. Williams fervently denied to no avail.

71. Not long after this reprimand, on or about March 24, 2017, Ms. Williams had another meeting with Ms. Rambo-Keaton and Lisa, in which the substance of Ms. Williams's complaints about discrimination and harassment was to be addressed.

72. The meeting quickly deteriorated.

73. Ms. Rambo-Keaton was dismissive and rude, refused to apologize to Ms. Williams or address any of the grievances Ms. Williams had raised, and told Ms. Williams that

she was "making up" all of the harassment that she had reported—despite the fact that other Birch employees had supported Ms. Williams's complaints.

74. Distressed by Birch's hostility and refusal to address her concerns, Ms. Williams began to experience serious health symptoms related to her disabilities.

75. Ms. Williams told Ms. Rambo-Keaton and Lisa that she needed to leave the meeting because the extremely stressful situation was causing her blood pressure to rise and she was concerned for her health.

76. In response, Lisa and Ms. Rambo-Keaton attempted to stop Ms. Williams from leaving the meeting, even grabbing her arm and repeatedly telling her to "wait" because they felt they could "resolve the problem."

77. Ms. Williams's blood pressure continued to rise as a direct consequence of the stress of the meeting and its effect on Ms. Williams because of her health conditions, and she insisted that she had to leave.

78. Ms. Williams was ultimately able to leave Birch's premises safely.

79. By the time Birch allowed her to do so, however, her medical condition had become so severe that she needed to immediately go to the emergency room.

80. On or about Sunday, March 26, 2017, Ms. Williams found a hand-delivered letter from Birch in her home mailbox.

81. The letter was dated March 24, 2017, and informed Ms. Williams that she was suspended and not permitted to return to work until she communicated with HR.

82. On or about April 5, 2017, Ms. Williams received another letter from Birch, stating that "based on allegations of code of conduct violations" and a purported lack of

10

communication between Birch and Ms. Williams, Ms. Williams's employment with Birch was terminated due to "job abandonment."

83. In reality, Birch discriminated against Ms. Williams and retaliated against Ms. Williams, ultimately terminating her.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII as Amended by the PDA

84. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 83 with the same force as though separately alleged herein.

85. Title VII, as amended by the PDA, prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of sex, including pregnancy, childbirth, and related medical conditions.

86. Defendant discriminated against Plaintiff on the basis of her pregnancy, childbirth, and related medical conditions by subjecting her to a hostile work environment.

87. As such, Defendant has violated Title VII.

88. As a direct and proximate consequence of Defendant's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

89. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation
### in Violation of Title VII as Amended by the PDA

90. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 89 with the same force as though separately alleged herein.

91. Title VII, as amended by the PDA, requires an employer to make reasonable accommodations for an employee's pregnancy, childbirth, and related medical conditions.

92. Defendant refused to make accommodations for Plaintiff's pregnancy and related medical conditions.

93. As such, Defendant has violated Title VII.

94. As a direct and proximate consequence of Defendant's failure to accommodate her, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

95. Defendant's discriminatory conduct was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION
### Wrongful Termination in Violation of Title VII as Amended by the PDA

96. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 95 with the same force as though separately alleged herein.

97. Title VII, as amended by the PDA, prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of sex, including pregnancy, childbirth, and related medical conditions.

98. Defendant discriminated against Plaintiff on the basis of her sex by terminating her employment based on her pregnancy and related medical conditions.

12

99. As such, Defendant has violated Title VII.

100. As a direct and proximate consequence of Defendant's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

101. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### FOURTH CAUSE OF ACTION
### Retaliation in Violation of Title VII

102. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 101 with the same force as though separately alleged herein.

103. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

104. Plaintiff engaged in protected activity under Title VII when she properly complained to Defendant about discriminatory treatment unlawful under Title VII.

105. Defendant retaliated against Plaintiff by subjecting her to further discrimination and harassment and terminating her employment.

106. As such, Defendant has violated Title VII.

107. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation in Violation of the ADA

108. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 107 with the same force as though separately alleged herein.

109. The ADA requires an employer to engage in an interactive process to identify reasonable accommodations for an otherwise qualified employee with a disability, including pregnancy and related medical conditions.

110. At all relevant times, Ms. Williams was an individual with a disability within the meaning of the ADA.

111. Defendant violated the ADA when it failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiff's disabilities.

112. As a direct and proximate consequence of Defendant's failure to accommodate her, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

113. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### Wrongful Termination in Violation of the ADA

114. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 113 with the same force as though separately alleged herein.

115. The ADA prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of disability, including pregnancy and related medical conditions.

116. At all relevant times, Ms. Williams was an individual with a disability within the meaning of the ADA.

117. Defendant discriminated against Plaintiff on the basis of her disabilities by terminating her employment based on her disabilities.

118. As such, Defendant has violated the ADA.

119. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

120. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of the ADA**

121. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 120 with the same force as though separately alleged herein.

122. The ADA prohibits an employer from retaliating against an employee because that employee has "opposed any act or practice" made unlawful under the ADA.

123. Plaintiff engaged in protected activity under the ADA when she complained to Defendant about discriminatory treatment and a failure to accommodate which were unlawful under the ADA.

124. Defendant violated the ADA when it retaliated against Plaintiff for her complaints about discrimination by subjecting her to further discrimination and harassment and terminating her employment.

125. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

### EIGHTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

126. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 125 with the same force as though separately alleged herein.

127. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of pregnancy, disability, or domestic violence victim status.

128. Defendant violated the NYCHRL when it subjected Plaintiff to a hostile work environment based on her pregnancy, disability, and domestic violence victim status.

129. As a direct and proximate consequence of Defendant's pregnancy, disability, and domestic violence victim status discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

130. Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### NINTH CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation in Violation of the NYCHRL

131. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 130 with the same force as though separately alleged herein.

132. The NYCHRL requires an employer to make a reasonable accommodation to enable an employee with a disability—including short-term disabilities, such as pregnancy and related medical conditions—to satisfy the essential requisites of a job, provided that the disability is known or should have been known to the employer.

133. At all relevant times, Ms. Williams was an individual with a disability within the meaning of the NYCHRL.

134. Defendant was fully aware of Plaintiff's disabilities, as Plaintiff notified Defendant of her disabilities.

135. Defendant failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiff's disabilities.

136. As such, Defendant has violated the NYCHRL.

137. As a direct and proximate consequence of Defendant's failure to accommodate her, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

138. Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### TENTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

139. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 138 with the same force as though separately alleged herein.

140. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of pregnancy, disability, or domestic violence victim status.

141. Defendant violated the NYCHRL when it terminated Plaintiff's employment based on her pregnancy, disability, and domestic violence victim status.

142. As a direct and proximate consequence of Defendant's pregnancy, disability, and domestic violence victim status discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

143. Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### ELEVENTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

144. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 143 with the same force as though separately alleged herein.

145. The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

146. Plaintiff engaged in protected activity under the NYCHRL when she properly complained to Defendant about discriminatory treatment unlawful under the NYCHRL.

147. Defendant retaliated against Plaintiff by subjecting her to further discrimination and harassment and terminating her employment.

148. As such, Defendant has violated the NYCHRL.

149. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## TWELFTH CAUSE OF ACTION
### Violation of the Breastfeeding Provisions of the FLSA, 29 U.S.C. § 207(r)

150. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 149 with the same force as though separately alleged herein.

151. The FLSA requires employers to provide "reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk."

152. Under the FLSA, employers are also required to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

153. Defendant violated the FLSA when it failed to provide Plaintiff with (1) reasonable break time to express breast milk, and (2) a place, other than a bathroom, that was shielded from view and free from intrusion by coworkers and the public to express breast milk.

154. Defendant's violation of the FLSA caused Plaintiff to suffer actual losses of wages due to unpaid time incurred.

155. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant compensatory and statutory damages and reasonable attorneys' fees, costs, and interest related to the action.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages, attorneys' fees, and costs to be determined at trial;

B. For the second cause of action, damages, attorneys' fees, and costs to be determined at trial;

C. For the third cause of action, damages, attorneys' fees, and costs to be determined at trial;

D. For the fourth cause of action, damages, attorneys' fees, and costs to be determined at trial;

E. For the fifth cause of action, damages, attorneys' fees, and costs to be determined at trial;

F. For the sixth cause of action, damages, attorneys' fees, and costs to be determined at trial;

G. For the seventh cause of action, damages, attorneys' fees, and costs to be determined at trial;

H. For the eighth cause of action, damages, attorneys' fees, and costs to be determined at trial;

I. For the ninth cause of action, damages, attorneys' fees, and costs to be determined at trial;

J. For the tenth cause of action, damages, attorneys' fees, and costs to be determined at trial;

K. For the eleventh cause of action, damages, attorneys' fees, and costs to be determined at trial;

L. For the twelfth cause of action, damages, attorneys' fees, and costs to be determined at trial; and

M. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 8, 2018

By: s/ Walker G. Harman, Jr.
Walker G. Harman, Jr.
Owen H. Laird
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*